UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JOHNSON,<br><br>                              Petitioner,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner,<br>Social Security Administration,<br><br>                              Respondent. | Case No.:  20-CV-747 JLS (AHG)<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART PETITIONER'S LOCAL RULE WAIVER MOTIONS, (2) DISMISSING WITHOUT PREJUDICE AMENDED WRITS, AND (3) DENYING AS MOOT PETITIONER'S REMAINING MOTIONS**<br><br>(ECF Nos. 19, 20, 21, 22, 23, 24) |

Presently before the Court are Petitioner James Johnson's Petitions for Emergency Writs of Mandamus (1 to 6) ("Am. Writs," ECF Nos. 19–19-3);[1] Supplemental Argument ("Br.," ECF No. 19-4); Declaration of Facts Regarding Prior Noticing of Respondent ("Decl. of Facts," ECF No. 19-5); Request for Appointment of Counsel ("Counsel Mot.," ECF No. 20); Ex Parte Motion for Local Rule Waiver re Exhibit Substitution and Labeling

---

[1] Although Petitioner describes his writs as "1 (of 6)," "2 (of 6)", "3 (of 6)," and 6 (of 6)," he in fact has filed only four writs rather than six, as he did not file writs 4 or 5.  *See generally id.*  Nonetheless, for clarity, the Court will refer to the Amended Writs using Petitioner's nomenclature.

("1st Rule Waiver Mot.," ECF No. 21), Ex Parte Motion for Local Rule Waiver re Amendment Redlining ("2d Rule Waiver Mot.," ECF No. 22), and Ex Parte Motion for Local Rule Waiver re Page Count ("3d Rule Waiver Mot.," ECF No. 23) (collectively, the "Local Rule Waiver Motions"); Ex Parte Motion for Declaratory Judgment ("DJ Mot.," ECF No. 24); and Updated Facts re Case No. 20cv747 ("Updated Facts," ECF No. 28).[2] Having carefully considered Petitioner's Motions and Amended Writs, Petitioner's legal arguments, and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's Local Rule Waiver Motions; **DISMISSES WITHOUT PREJUDICE** Petitioner's Amended Writs; and **DENIES WITHOUT PREJUDICE AS MOOT** Petitioner's Counsel and DJ Motions.

## PROCEDURAL BACKGROUND

Petitioner initiated this action on April 20, 2020.  *See* ECF No. 1.  On June 15, 2020, the Court granted Petitioner's motion to proceed *in forma pauperis* but dismissed without prejudice Petitioner's writs for failure to state a claim.  *See generally* ECF No. 11.  On June 18, 2020, Petitioner filed a motion seeking to proceed under a pseudonym and requesting permission to file certain documents under seal.  *See* ECF No. 12.  The Court granted in part and denied in part Petitioner's motion.  *See* ECF No. 13.

After seeking and obtaining an extension of time, *see* ECF Nos. 16 and 17, Petitioner filed his Amended Writs on August 18, 2020, *see* ECF No. 19.

## LOCAL RULE WAIVER MOTIONS

"Although [courts] construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."  *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (citing *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987)).  Consequently, the Court is unable and unwilling to provide a blanket waiver to the Federal Rules of Civil Procedure and this District's Local Rules.

---

[2] Petitioner also filed an Emergency Complaint and Motion for Injunction (ECF No. 26), but he subsequently filed a Notice and Withdrawal of "Emergency Complaint and Motion for Injunction" (ECF No. 30).  Accordingly, this Order does not address the withdrawn complaint and motion.

Petitioner moves *ex parte* for three "Local Rule waivers": (1) an order excusing Petitioner's failure to file the Amended Writs with the exhibits referenced therein as required by Civil Local Rule 15.1(a) and directing the Clerk to "refile" the exhibits to his original writs with his Amended Writs, *see generally* 1st Rule Waiver Mot.; (2) an order excusing Petitioner's failure to submit a redline of his Amended Writs against the originals, as required by Civil Local Rules 15.1(b) and (c), *see generally* 2d Rule Waiver Mot.; and (3) an order excusing the page-count limits applicable to his Amended Writs and their attendant exhibits, *see generally* 3d Rule Waiver Mot.

Good cause appearing, the Court **GRANTS** Petitioner's First and Second Rule Waiver Motions. The Court will not reject Petitioner's Amended Writs for failure to include redlines, and the Court excuses Petitioner's failure to refile the exhibits submitted with the original writs and will consider those exhibits incorporated by reference by the Amended Writs.

As to the Third Rule Waiver Motion, the Court will not reject Petitioner's Amended Writs outright solely for exceeding any applicable page count limits. However, to the extent Petitioner's Third Rule Waiver Motion essentially seeks a waiver of his responsibility to comply with Federal Rule of Civil Procedure 8(a)'s "short and plain statement of the claim" requirement, the Court **DENIES** the Third Rule Waiver Motion, for the reasons provided *infra* at 10–12. The Court reiterates its entreaty for Petitioner "to be mindful of the Court's finite resources." ECF No. 11 at 3. Sometimes less is more.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

### I. Standard of Review

Because Petitioner is proceeding *in forma pauperis* ("IFP"), his Amended Writs require a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Bell-Sparrow v. Am. Arbitration Ass'n*, No. 19-CV-00997-TSH, 2019 WL 1767203, at *1 (N.D. Cal. Apr. 22, 2019) (screening IFP writ); *Banks v. Song*, No. 17-CV-1460 JLS (WVG), 2017 WL 4810097, at *1 (S.D. Cal. Oct. 25, 2017) (same); *Street v. Arizona*, No. CV-11-08009-PCT-NVW, 2011 WL 206143, at *1 (D. Ariz. Jan. 20, 2011) (same); *Bird v. Bowen*, No.

CIVS081088MCECMK, 2008 WL 3059466, at *1 (E.D. Cal. Aug. 5, 2008) (same).  Courts in this District also screen amended pleadings filed IFP.  *See, e.g.*, *Lorretz v. Jewish Fed'n*, No. 12-CV-1055-BEN NLS, 2012 WL 1850957, at *1 (S.D. Cal. May 18, 2012) (screening amended complaint filed by plaintiff proceeding IFP and pro se and noting screening is "mandatory"); *accord Contreras v. Vazquez*, No. 09CV1267-IEG(CAB), 2009 WL 3248088, at *2 (S.D. Cal. Oct. 7, 2009) (noting, as to amended complaint, that, "as the Court indicated when it dismissed in part Plaintiff's original complaint, the Court is under a continuing duty to dismiss an *in forma pauperis* case 'any time' the Court determines that the action 'fails to state a claim on which relief may be granted'" and engaging in screening) (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

Under 28 U.S.C. § 1915(e)(2), the Court must *sua sponte* dismiss a complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"When a court does not have jurisdiction to hear an action, the claim is considered frivolous."  *Johnson v. E. Band Cherokee Nation*, 718 F. Supp. 6, 6 (N.D.N.Y. 1989).  Moreover, "[t]he Court has an independent obligation to determine whether it has subject-matter jurisdiction."  *Cox v. Lee*, No. CV-20-0275-PHX-DMF, 2020 WL 1904625, at *2 (D. Ariz. Apr. 17, 2020) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citation omitted).  Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action" (emphasis added).  As the plain language of Rule 12(h)(3) suggests, this requirement is mandatory.  *See Arbaugh v.*

*Y&H Corp.*, 546 U.S. 500, 514 (2006) (noting that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived'"; therefore, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety") (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Further, "[w]hile factual allegations are accepted as true, legal conclusions are not." *Hoagland v. Astrue*, No. 1:12-cv-00973-SMS, 2012 WL 2521753, at *3 (E.D. Cal. June 28, 2012) (citing *Iqbal*, 556 U.S. at 678). Courts cannot accept legal conclusions set forth in a complaint if the plaintiff has not supported his contentions with facts. *Id.* (citing *Iqbal*, 556 U.S. at 679). Finally, in deciding whether Petitioner has stated a plausible claim for relief, the Court also may consider exhibits attached to his filing. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) (noting that "material which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss)). However, "[i]t is not

the Court's responsibility to sift through plaintiff's multiple exhibits in an attempt to glean whether plaintiff has an adequate basis upon which to state any other claim for relief." *El-Shaddai v. Zamora*, No. CV 13-2327 RGK(JC), 2019 WL 2026683, at *10 (C.D. Cal. May 8, 2019), *aff'd*, 807 F. App'x 721 (9th Cir. 2020) (citations omitted).

Courts have a duty to construe a *pro se* litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect," unless the court determines that "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

## II.   Petitioner's Factual Allegations

On August 18, 2020, Petitioner filed the four "emergency" Amended Writs at issue against the Commissioner of the Social Security Administration. *See generally* Am Writs. Petitioner alleges that this Court has federal question jurisdiction, *see* ECF No. 19 ("Am. 1st Writ") at 6, as well as mandamus jurisdiction pursuant to 28 U.S.C. § 1361, *see id.*, declaratory judgment jurisdiction under 28 U.S.C. § 2201, *see id.*, and jurisdiction under the Administrative Procedures Act, 5 U.S.C. § 706, *see id.*, and the All Writs Act, 28 U.S.C. § 1651, *see id.*

Despite the Court's exhortations, Petitioner's Amended Writs remain lengthy, comprising 134 pages exclusive of exhibits. *See generally* Am. Writs. Nonetheless, the Court again attempts to distill succinctly the pertinent factual background, which remains largely unchanged from the original writs:

Petitioner filed claims for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") on or around May 29, 2012. Am. 1st Writ at 8. Petitioner's SSI claim regarding peripheral neuropathy disability was approved on or around November 22, 2013, although "no official medical date of onset was determined" at the time, and the Social Security Administration (the "Agency") withheld about six

months of payments for June 2012 through February 1, 2013.  *Id.*  The Agency began paying Petitioner's SSI benefits in January 2014, although the Agency erroneously classified Petitioner as a dependent adult.  *See id.* at 9.

The first hearing on Petitioner's SSDI claims was held on or around December 20, 2016.  *See id.* at 11.  Prior to that date, Petitioner filed subpoena requests so that he might secure "vital testimony" and arranged for his treating physicians to testify by telephone.  *Id.*  At the hearing, Petitioner informed the Administrative Law Judge ("ALJ") that several records he had submitted were missing from his case file.  *See id.*  The ALJ concluded the hearing without addressing Petitioner's subpoenas or hearing the testimony of Petitioner's witnesses.  *See id.*  Petitioner's witnesses can no longer be located.  *See id.* at 3, 19.

On July 12, 2017, the ALJ denied Petitioner's SSDI claims on the ground that Petitioner was not disabled between the alleged onset date through the date last insured.  *See generally* ECF No. 1-9 Ex. 23.  Petitioner appealed the ALJ's decision to the Appeals Council.  Am. 1st Writ at 13.  On July 20, August 28, and December 7, 2017, Petitioner requested from the Appeals Council the written transcript and audio recording of the hearing.  *See id.* at 12–13; *see also* ECF No. 1-6 Exs. 5 & 6; ECF No. 1-8 Ex. 19.  He received no response.  *See* Am. 1st Writ at 13.  Despite not having received his case file, Petitioner filed a provisionary brief under protest.  *See id.*; *see also* ECF No. 1-8 Ex. 19.  Eventually, Petitioner received a copy of his case file, which was missing evidence he had submitted, and the hearing transcript.  *See* Am. 1st Writ at 13.  Petitioner then filed his official brief with the Appeals Council on or around August 4, 2018.  *See id.* at 14; *see also* ECF Nos. 1-4–5 Ex. 4.

On October 29, 2018, the Appeals Council remanded Petitioner's case to the ALJ.  *See* Am. 1st Writ at 14; *see also generally* ECF No. 1-10 Ex. 24.  Specifically, the Appeals Council instructed the ALJ to "[c]larify the alleged onset date of disability and further evaluate the nature and severity of the claimant's medically determinable impediments throughout the entire period at issue" and "[t]o address the claimant's subpoena requests."  Ex. 24 at 4.  As far as Petitioner's claims of "improper procedures, bias, and misconduct"

on the part of the ALJ, the Appeals Council concluded that the ALJ had not abused his discretion.  *See id.*

In December 2018, Petitioner received compact discs ("CDs") containing his case file.  *See* Am. 1st Writ at 14.  Petitioner, however, could not access the CDs because he did not have access to a computer with a CD drive; accordingly, he requested a hard copy of his case file on February 19 and March 25, 2019.  *See id.*  Again, Petitioner received no response.  *See id.* at 15.  Eventually, on multiple occasions, Petitioner requested an Electronic Records Express ("ERE") account.  *See id.* at 14 –16.  His requests for an ERE account were ignored.  *See id.*  He also contacted the Agency regarding gaining access to his case file through his Social Security Online Account, *see id* at 17–18; ECF No. 1-15 Ex. 52, but he never received a response or access to his account, *see* Am. 1st Writ at 18.

In the meantime, Petitioner received a call on May 7, 2019, requesting to schedule the hearing on remand.  *See id.* at 16; *see also* ECF No. 1-14 Ex. 46.  Petitioner objected both over the phone, *see* Am. 1st Writ at 16, and again in a follow-up letter, *see id*.  He received no response to his objections.  *See id.* at 15.

By letter dated June 11, 2019, Petitioner received a notice of hearing scheduled for October 1, 2019.  *See id.* at 16; *see also* ECF No. 1-4 Ex. 1.  The notice indicated that the Agency intends to call two new witnesses: (1) a medical expert, and (2) a new vocational expert.  *See* Am. 1st Writ at 19.  Petitioner objected—both to the notice and to the new experts—and again requested access to his case file.  *See id.* at 16–19; *see also* ECF No. 1-4 Ex. 2.  On August 8, 2019, Petitioner sent a "final notice" to the Agency, requesting that the hearing be rescheduled and his objections addressed.  *See* Am. 1st Writ at 17; *see also* ECF No. 1-4 Ex. 3.  Again, Petitioner received no response.  *See* Am. 1st Writ at 17.

On October 7, 2019, Petitioner filed a substantially identical action, *Smith v. Saul*, No. 19-CV-1813 LL (S.D. Cal. filed Oct. 7, 2019) (the "Prior Action"), which was assigned

/ / /

/ / /

/ / /

to Magistrate Judge Linda Lopez.  *See* Prior Action ECF No. 1.[3]  On October 18, 2019, Petitioner voluntarily dismissed the Prior Action, *see* Prior Action ECF No. 8, following Magistrate Judge Lopez's denial of his motion to file the action under seal, *see* Prior Action ECF No. 5.

The second hearing eventually was rescheduled for April 21, 2020, *see* ECF No. 1-14 Exs. 60 & 61, and then June 10, 2020, *see* ECF No. 10 at 2.  The June 10, 2020 hearing apparently proceeded telephonically, although it does not appear that the hearing substantively addressed Petitioner's claims.  *See* ECF No. 26 at 5.  On or around August 6, 2020, Petitioner sent a letter to a number of individuals that "revealed a variety of documented crimes occurring at Social Security that included evidence tampering on a large scale."  *Id.*  Petitioner subsequently filed Freedom of Information Act ("FOIA") requests to the Agency as well as California disability review officials, but he has received no response to the requests.  *Id.* at 6.  Petitioner had several further conversations with Agency employees about obtaining his case file as well as purported irregularities in the records contained therein; but, again, he did not receive further responses.  *Id.* at 6–7.

At some point, Petitioner's hearing was rescheduled for September 15, 2020.  *Id.* at 1, 7.  However, the hearing was subsequently "voluntarily postpone[d]" by the Agency.  *See* ECF No. 30 at 1–2.  It is not clear from the record whether the hearing has been rescheduled, or, if so, for what date.

Petitioner has filed four separate "writs":

In the first writ, "Petitioner seeks an order to compel Respondent to suspend all further hearings pending ongoing court oversight and approvals of all agency compliances with the Rules subject to Petitioner's redress."  Am. 1st Writ at 20.

/ / /

---

[3] The Court can *sua sponte* take judicial notice of the docket of the Prior Action.  *See, e.g.*, *Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (holding that courts may take judicial notice of dockets in related cases because materials from proceedings in other tribunals are appropriate for judicial notice).

20-CV-747 JLS (AHG)

In the second writ, Petitioner requests that this Court "compel[] Respondent to recuse the current Administrative Law Judge Eric Benham for cause and re-assign Petitioner's case to a new Administrative Law Judge," or, alternatively, "compel[] Respondent to address each allegation against the ALJ made by Petitioner and submit, in writing, the reasons why the Administrative Law Judge will not recuse."  ECF No. 19-1 ("Am. 2d Writ") at 20.

In the third writ, Petitioner requests that the Court order the Agency to "[e]xpedite and conclude the case as quickly as possible while protecting and preserving all Rights and privileges and reasonable accommodations needed by Claimant."  ECF No. 19-2 ("Am. 3d Writ") at 21.  Petitioner also asks the Court to "not order, but strongly suggest[] a showing of good faith that might include" approving various requests Petitioner has made, for example, approving all subpoena requests and witness interrogatory requests, approving assignment of his case to an adjudication officer, or approving telephonic appearances for Petitioner.  *Id.* at 21–22 (emphasis in original).

Finally, in the sixth writ,[4] Petitioner requests that the Court enter summary judgment as to Petitioner's cardio disability claim with an onset date of January 1, 2009, and order the Agency to "immediately and fully pay Claimant all past due benefits owed, if any, in one lump sum."  ECF No. 19-3 ("Am. 6th Writ") at 28.

## III.  Analysis

### A.  *Federal Rule of Civil Procedure 8*

Federal Rule of Civil Procedure 8 requires pleadings to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Violations of this Rule warrant dismissal, but there are multiple ways that it can be violated."  *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).  "One well-known type of violation is when a pleading says *too little*—the baseline threshold of factual and legal allegations required was the central issue in the *Iqbal* line of cases."  *Id.* (emphasis in

---

[4] As noted *supra* at note 1, Petitioner has not filed amended fourth or fifth writs.  *See generally* Am. Writs.

original) (citing *Iqbal*, 556 U.S. at 678). "The Rule is also violated, though, when a pleading says *too much*." *Id.* (emphasis in original) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011); *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996)).  Rule 8(a) applies equally to writs for mandamus. *See, e.g.*, *Banks v. Song*, No. 17-CV-1460 JLS (WVG), 2017 WL 4810097, at *4 (S.D. Cal. Oct. 25, 2017).

"While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.'" *Cafasso*, 637 F.3d at 1059 (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed. 2010)).  Consequently, the Ninth Circuit has affirmed dismissals under Rule 8 where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling." *See id.* at 1058–59 (collecting cases).

This Court previously found dismissal of Petitioner's Writs warranted due to their excessive length.  *See* ECF No. 11 at 11–12.  Petitioner's Amended Writs are still exceedingly lengthy, repetitive, and confusing, spanning 134 pages plus more than 900 pages of exhibits.  Once again, this greatly exceeds the length of the complaint in *Cafasso*, which was an unwieldly 733-page pleading. *See* 637 F.3d at 1059.  As the Court previously explained to Petitioner, "district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations." *See Cafasso*, 637 F.3d at 1059 (emphasis in original).

Dismissal of the Amended Writs therefore is warranted once more under Rule 8(a). *See, e.g.*, *Cafasso*, 637 F.3d at 1058–59; *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988) (finding pleading containing factual elements of claim scattered throughout complaint, rather than organized into "short and plain statement of the claim," properly dismissed for failure to satisfy Rule 8(a)); *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[E]ven if it were possible to navigate through these papers

to a few specific instances of fraud, why should the court be obliged to try?  Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.  Federal judges have better things to do, and the substantial subsidy of litigation (court costs do not begin to cover the expense of the judiciary) should be targeted on those litigants who take the preliminary steps to assemble a comprehensible claim.").

### B.    *Subject Matter Jurisdiction*

"Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'"  *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)).

As noted above, Petitioner alleges that this Court has federal question jurisdiction, mandamus jurisdiction, declaratory judgment jurisdiction, jurisdiction under the Administrative Procedures Act, and jurisdiction under the All Writs Act.  *see* Am. 1st Writ at 6.  The Court analyzes each alleged basis for its jurisdiction in turn.

### 1.    *Federal Question Jurisdiction and 42 U.S.C. § 405(g)*

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Pursuant to the Social Security Act ("SSA"), however, "[n]o action against . . . the Commissioner of Social Security . . . shall be brought under section 1331 . . . of title 28 to recover on any claim arising under [Title 42, Chapter 7,] subchapter [II]."  42 U.S.C. § 405(h).  "The Supreme Court has read Section 405(h) broadly to encompass any claim for which the SSA provides both the 'standing and substantive basis.'"  *Taylor v. Astrue*, No. C-07-05549 EDL, 2008 WL 3823718, at *1 (N.D. Cal. Aug. 13, 2008) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)) (citing *Hecker v. Ringer*, 466 U.S. 602, 614–18 (1984)); *accord Stevenson v. Astrue*, No. C 06-05422 JSW, 2007 WL 9711964, at *3 (N.D. Cal. May 1, 2007) ("The Supreme Court has interpreted the term 'arising under,' as used

in Section 405(h), to require that 'virtually all legal attacks' be channeled through the administrative process.") (citing *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000)[5]; *Heckler*, 466 U.S. 602; *Weinberger*, 422 U.S. 749).

"The Ninth Circuit, following *Weinberger* and its progeny, has articulated two tests 'to determine whether claims arise under' the Social Security Act." *Stevenson*, 2007 WL 9711964, at *4 (quoting *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1112 (9th Cir. 2003)). "The first test examines whether the claims are inextricably intertwined with a [Social Security] benefits determination." *Id.* (quoting *Kaiser*, 347 F.3d at 1112) (internal quotation marks omitted) (alteration in original). "If so, they arise under the Social Security Act." *Id.* (citing *Kaiser*, 347 F.3d at 1112). "The second test examines whether the claims are such that both the standing and the substantive basis for the presentation of the claims is the Social Security Act." *Id.* (internal quotation marks omitted) (citing *Kaiser*, 347 F.3d at 1112). "Again, if the answer to that question is yes, the claims 'arise under' the act." *Id.* (citing *Kaiser*, 347 F.3d at 1112).

As with Petitioner's original writs, "[a]lthough P[etitioner]'s claim of a procedural due process [or equal protection] violation arguably 'arises under' the Constitution, [*see, e.g.*, Am. 1st Writ at 6] . . . the crux of [Petitioner's Amended Writs] is with irregularities in the processing of h[is] individual claim for benefits and . . . []he seeks to remedy that allegedly flawed process as it applied to h[im]." *See id.* "Thus, the Court concludes that the allegations in the [Amended Writs] are inextricably intertwined with the determination of [Petitioner's] claim for benefits, and further concludes that the Social Security Act

---

[5] Petitioner takes issue with the Supreme Court's ruling in *Illinois Council*. *See* Br. at 2–3. However, this Court does not rely on *Illinois Council* directly, only citing to a case that in turn cites to *Illinois Council*. At any rate, while Petitioner contends the decision, "well-meaning as it was, is unconstitutional because it seeks to hinder or deny due process and the checks and balances purpose of the Judicial Branch as set forth in the founding documents of the nation," *see* Br. at 3, the fact remains that this Court is bound by Supreme Court precedent and lacks the power to overrule it. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must.") (citing *Ortega v. United States,* 861 F.2d 600, 603 & n.4 (9th Cir.1988)).

provides the standing and substantive basis for presenting the claims to this Court." *See id.*; *see also Korb v. Colvin*, No. 4:12-CV-03847-JST, 2014 WL 2514616, at *6 (N.D. Cal. June 4, 2014) ("[T]he Court concludes that [the plaintiff]'s first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims all 'arise under' the Social Security Act because they are 'inextricably intertwined' with a Social Security benefits determination."); *Taylor*, 2008 WL 3823718, at *2 ("[T]he Appeals Council's remand provides [the plaintiff] additional process, unlike cases that required reopening to address similar issues.  Therefore, Plaintiff's allegation of the undue delay of adjudicating his case does not raise a colorable constitutional claim that supports federal question jurisdiction.").  Accordingly, "the exhaustion requirements of Section 405(g) apply." *See Stevenson*, 2007 WL 9711964, at *4; *accord Korb*, 2014 WL 2514616, at *6 ("[The plaintiff] was required to exhaust those claims administratively before filing a federal action.") (citing *Johnson v. Shalala*, 2 F.3d 918, 920 (9th Cir. 1993)).[6]

---

[6] Petitioner argues that this analysis is incorrect, as "Claimant is part of an entire class of disabled individuals similarly situated and negatively impacted by the agency's failures to comply with its own rules, polices [*sic*] and regulations while operating on hidden policies that cannot be defended against by any claimant (simply because they are, in fact, hidden[)]."  Br. at 3–4.  However, the fact remains that Petitioner asserts claims only on behalf of himself and not a putative class.  *See generally* Am. Writs (captioned "In Re James Johnson, Petitioner").  Accordingly, the Court stands by its determination that the Amended Writs generally are concerned with the adjudication of only Petitioner's claim for benefits, even if his voluminous Amended Writs contain references to procedural improprieties that allegedly affect others.  *See, e.g.*, Br. at 8–10 (titled "Petitioner's Class Issue").  While Petitioner is free to amend his writs to bring claims on behalf of a putative class, any effort to do so pro se, without obtaining representation, could not succeed.  *See Hymas v. United States Dep't of Interior*, No. 4:16-CV-5091-SMJ, 2017 WL 3258716, at *6 (E.D. Wash. Mar. 20, 2017) ("[A] pro se litigant[] cannot represent the class either as class counsel or as a representative party."); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) ("It is well established that the privilege to represent oneself pro se provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities.").

Petitioner also appears to take issue with the Court's citations to *Korb* and *Taylor*, arguing that "[v]iolations of the APA do not arise under the Social Security Act," and that he "does not ask the court to substitute its decisions for those of the agency but to press the decision making process into being expedited through the strongest and most aggressive way possible to as to make an impact on an agency that, traditionally, has little or no respect for the courts or claimants."  Br. at 4–5.  However, as *Korb* and multiple other authorities make clear, APA claims premised on the denial of benefits and irregularities in that process often are found to "arise under" the SSA.  *See, e.g.*, *Keovongsa v. Colvin*, No. 16-CV-842-BTM-NLS, 2016 WL 6962748, at *2 (S.D. Cal. Nov. 28, 2016) (finding APA claim alleging Defendant

Pursuant to 42 U.S.C. § 405(g), "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."  Section 405(g) "provides federal courts with jurisdiction to review decisions of the [Commissioner] which are 'final.'"  *Hironymous v. Bowen*, 800 F.2d 888, 894 (9th Cir. 1986).  "The finality condition has been held to include a nonwaivable requirement of presentation of the claim and a waivable requirement of exhaustion of administrative remedies."  *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

Based on the hundreds of pages before this Court, it seems uncontroversial that Petitioner has presented his claim for benefits to the SSA.  However, "[i]n light of the . . . remand [of Petitioner's case to the ALJ], P[etitioner] has not exhausted h[is] administrative recourse."  *See Coleman v. Barnhart*, No. C 03-0089 SI, 2003 WL 22722816, at *3 (N.D. Cal. Nov. 12, 2003).  Petitioner claims that "a decision was made with respect to Claimant's cardo [*sic*] disability—which qualifies as a final decision within the framework of the larger disability claim."  Br. at 6.  Further, Petitioner argues that exhaustion should be waived as to his remaining claims, as this is a case "'where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate."  Br. at 6 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 330 (1976)).  A district court may waive the exhaustion requirement if the claim at issue is "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal

---

"failed to afford [claimant] a full and fair hearing . . ., in violation of the [APA], § 5 U.S.C. § 706(2)(A)," arose under the SSA, and therefore Court lacked subject-matter jurisdiction).  Here, the Amended Writs are "rooted in the way the SSA reviewed and decided [Petitioner]'s application for SSI benefits.  Accordingly, because [Petitioner]'s Amended [Writs] improperly assert[] jurisdiction under 28 U.S.C. § 1331 rather than under 42 U.S.C. § 405(g), [they] must be dismissed for lack of subject matter jurisdiction."  *Winters v. Comm'r of Soc. Sec. Admin.*, No. CV-18-03323-PHX-JAT, 2019 WL 3767012, at *5 (D. Ariz. Aug. 9, 2019).

of the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987) (citations omitted).

The Court does not believe Petitioner has exhausted his cardio claim, as it is not clear to the Court that the cardio claim was excluded from the Appeals Council's remand order. *See generally* Ex. 24 (ordering ALJ to "[c]larify the alleged onset date of disability and further evaluate the nature and severity of the claimant's medically determinable impairments throughout the entire period at issue," which, while it does not specify the cardio claim, also does not specify any other disability claims, and accordingly does not seem to exempt the cardio claim). Accordingly, the Court will assess whether waiver of exhaustion applies to all of Petitioner's Amended Writs.

Petitioner likely has adequately alleged irreparability, as the Ninth Circuit has held that "economic hardship suffered by the plaintiffs while awaiting administrative review constitutes irreparable injury." *Johnson*, 2 F.3d at 922 (citing *Schweiker v. Chilicky,* 487 U.S. 412, 428 (1988)). Further, additional alleged harms, such as "undue mental and physical forms of stress," are irreparable. *Doe*, 2009 WL 2566720, at *6 (finding payment of benefits could not reverse "severe anxiety, psychotic episodes, and hallucinations" allegedly caused by the Agency's actions). As to futility, Petitioner claims that he "will almost certainly be dead prior" to the time that he can exhaust his administrative remedies, and that "a fair and impartial second hearing is impossible due to hidden policies and procedures that are harming Petitioner and his ability to fully and fairly complete the record." Br. at 7 (footnote omitted). It does appear that much of the relief Petitioner requests—for example, a suspension of any further hearings until he can obtain his record and subpoena witnesses, expedition of his benefits determination, and recusal of the ALJ—would be rendered futile by requiring exhaustion.

However, Petitioner has not adequately alleged collaterality. "A plaintiff's claim is collateral if it is not essentially a claim for benefits." *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) (citing *Bowen v. City of New York,* 476 U.S. 467, 483 (1985)). The

Amended Writs are not a model of clarity; however, the Sixth Amended Writ primarily is directed to the grant of Petitioner's benefits on his cardio disability claim. *See generally* Am. 6th Writ (requesting the Court enter summary judgment in favor of Petitioner on his cardio claim and order Respondent to "immediately and fully pay Claimant all past due benefits owed"). Meanwhile, while Petitioner's First, Second, and Third Amended Writs appear to largely contest procedures applied by the Social Security Administration, *see generally* Am. 1st Writ; Am. 2d Writ; Am. 3d Writ, they do not appear to allege systemic policies misapplied across the board, but rather the Agency's purported failure to abide by its own policies and regulations with regard to Petitioner's specific benefits claim.[7] Accordingly, because Petitioner has not adequately alleged collaterality, he has failed to establish the finality condition, and thus the Court lacks jurisdiction over the Amended Writs under Section 405(g).[8]

---

[7] Although Petitioner's Amended Writs reference various "hidden polic[ies]," *see, e.g.*, Br. at 8, Petitioner fails to identify what these alleged policies are. *Cf. Briggs v. Sullivan*, 886 F.2d 1132, 1139–41 (9th Cir. 1989) (waiving exhaustion in putative class action challenging "policy of suspending benefits for up to 90 days (and in some cases longer) when a claimant lacks a representative"); *Johnson v. Shalala*, 2 F.3d 918, 921–22 (9th Cir. 1993) (noting that challenges to "policy that mandated a presumption that mentally disabled applicants were qualified to do unskilled work" and "policy of treating as income all in-kind loans" were collateral, as "the plaintiff's attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits").

[8] The Court further notes that Petitioner fails to address the 60-day filing period, which is also relevant to the jurisdictional issue. *See, e.g.*, *Anderson v. Astrue*, No. 1:08CV00033-SMS, 2008 WL 4506606, at *3 (E.D. Cal. Oct. 7, 2008) ("It is established that § 405(g) is a statute of limitations. However, it is likewise a condition on the waiver of sovereign immunity and thus has been strictly construed to permit extension only in special circumstances. Sovereign immunity is jurisdictional in nature. The limitations to final decisions and to a sixty-day filing period serve to compress the time for judicial review and to limit judicial review to the original decision denying benefits, thereby forestalling repetitive or belated litigation of stale eligibility claims.") (citations omitted). To the extent Petitioner's Amended Writs fail to comply with the 60-day limitations period, Petitioner bears the burden of establishing that equitable tolling applies. *See Little v. Astrue*, No. CV 12-30-BU-DLC, 2012 WL 5879602, at *1 (D. Mont. Nov. 21, 2012) ("[T]he Court may extend the 60–day statute of limitations period enumerated in § 405(g) where the equities in favor of tolling the limitation are so great that deference to the agency's judgment is inappropriate. The plaintiff bears the burden of establishing the exceptional circumstances that warrant equitable tolling, and generally must show fraud, misinformation or deliberate concealment. In the Ninth Circuit, [e]quitable tolling focuses on whether there was excusable delay by the plaintiff and may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of [her] claim.") (internal quotation marks and citations omitted).

### 2.     *Mandamus Jurisdiction*

Pursuant to section 1361 of Title 28 of the United States Code, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."   "[M]andamus [is] appropriate only when a party demonstrate[s] that the [Commissioner] 'owe[d] him a clear nondiscretionary duty.'"  *Briggs v. Sullivan*, 886 F.2d 1132, 1142 (9th Cir. 1989) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)) (fifth alteration in original).  As Petitioner acknowledges, *see, e.g.*, Br. at 10, "[m]andamus is an 'extraordinary remedy,'" *Patel v. Reno,* 134 F.3d 929, 931 (9th Cir. 1998), that "is available only when '(1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.'" *Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003) (quoting *Or. Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995)).[9]

Petitioner once more has failed to establish his entitlement to mandamus. Petitioner's claims remain neither clear nor certain, nor have Petitioner's amendments made clear that any of the four Amended Writs seek to compel action pursuant to a clear, nondiscretionary duty owed to Petitioner.  The Amended Writs continue to request orders compelling compliance with certain procedural requirements, none of which are clearly nondiscretionary.  Indeed, Petitioner baldly states that "[t]he regulations are overfilled with hedging terms like 'may' and [*sic*] instead of concrete terms that make the party's roles

---

[9] Petitioner argues that "[t]he court's subject matter jurisdiction is a separate issue from the court's authority to grant mandamus relief."  Br. at 11 (citing *Ahmed v. DHS*, 328 F.3d 383, 386–87 (7th Cir. 2003)).  However, the Ninth Circuit has explicitly held that "[m]andamus ***jurisdiction*** exists when a plaintiff has a clear right to relief, a defendant has a clear duty to act and no other adequate remedy is available."  *Piledrivers' Local Union No. 2375 v. Smith*, 695 F.2d 390, 392 (9th Cir. 1982) (citation omitted) (emphasis added).  The Ninth Circuit has reaffirmed this jurisdictional pronouncement within the last several years.  *See Casa Colina Hosp. & Centers for Healthcare v. Wright*, 698 F. App'x 406 (9th Cir. 2017) (citing with approval *Piledrivers' Local Union*, 695 F.2d at 392).  Even assuming the Court's mandamus analysis were not jurisdictional, however, the Court's screening under 28 U.S.C. § 1915(e)(2) would find, for the same reasons, that Petitioner fails to state a claim for mandamus, and therefore the Court nonetheless would order dismissal.

20-CV-747 JLS (AHG)

clear," apparently acknowledging the discretionary nature of the Agency's duties.  Br. at 8.

For example, while Petitioner repeatedly faults the Agency for its alleged failures to comply with rules and procedures set forth in two internal manuals, HALLEX and POMS, the Ninth Circuit has held in no uncertain terms "that neither imposes judicially enforceable duties."  *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (citing *Moore,* 216 F.3d at 868–69; *Hermes v. Sec'y of Health & Human Servs.,* 926 F.2d 789, 791 n.1 (9th Cir. 1991)).  While Petitioner urges that this conclusion "opposed the US Supreme Court," and that "HALLEX (and POMS) are completely binding on the agency," *see* Br. at 14, the fact remains that this Court is bound by the Ninth Circuit's holding on this issue.  *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Circuit law . . . binds all courts within a particular circuit, including the court of appeals itself.  Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit [i.e., a district court, like this one], but also future panels of the court of appeals.") (citation omitted).   Thus, "[a] district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided."  *Id.* at 1175.

Moreover, the Court previously noted that "it does not appear that Petitioner is entitled to review by an adjudication officer pursuant to 20 C.F.R. § 416.1443, which provision implements a 'test' procedure to be instituted in certain sites, with participants to be 'assigned randomly.'"  ECF No. 11 at 15–16 (citing 20 C.F.R. § 416.1443(a)(2)).  The Court also previously explained that "Petitioner's request that the Court order the ALJ to rule on his objections prior to the hearing is not merited under the regulations, pursuant to which the ALJ has discretion to make a decision on any objections 'either *at the hearing* or in writing before the hearing.'"  ECF No. 11 at 16 (citing 20 C.F.R. § 404.939) (emphasis in original).  Petitioner's reframing his request so that "[t]he court does not order, but strongly suggest[]," *see* Am. 3d Writ at 21, such relief does not alter the fundamentally discretionary nature of Respondent's "duties."

/ / /

While Petitioner argues that "mandamus actions can be used to compel the government to exercise its discretion in a case where the government has failed to take any action," Br. at 12, it does not appear, based on Petitioner's allegations, that the Agency has wholly failed to perform any acts required of it (even assuming such acts are nondiscretionary—and again, that appears not to be the case). For instance, while Petitioner might not be pleased with the format in which he was provided his case file, he has been given both a (supposedly incomplete) physical copy as well as compact discs containing the materials. As another example, Petitioner complains that the ALJ has not issued his requested subpoenas. However, the Appeals Council remanded to the ALJ to, among other things, "[a]ddress the claimant's subpoena requests." *See* Ex. 24 at 4. The Agency has multiple times rescheduled, or attempted to reschedule, Petitioner's hearing, where the ALJ would presumably address the subpoena issues, but Petitioner has repeatedly blocked those efforts. Petitioner cannot complain of undue delay while simultaneously acting to prevent the resolution of his claims.

Further, Petitioner cannot meet the requirement that no other adequate remedy is available. "[I]f available administrative remedies have not been exhausted, mandamus will not lie." *Neal*, 451 F. Supp at 1337. Here, given that Petitioner's case has been remanded to the ALJ, Petitioner has not exhausted his administrative remedies, and alternate and adequate remedies are available for many of the harms he alleges. For example, with regard to his request to order the recusal of the ALJ, while there are regulations imposing a duty of impartiality, *see Lowry*, 329 F.3d at 1023 (citing 20 C.F.R. §§ 404.940, 416.1440),[10] as this Court noted in its prior order, there exist other adequate remedies

---

[10] To the extent Petitioner seeks to disqualify the ALJ pursuant to 28 U.S.C. § 144, *see, e.g.*, Am. 2d Writ at 10, that provision, by its plain language, applies only to ***district court*** judges, not administrative law judges. *See* 28 U.S.C. § 144; *see also Pilla v. Am. Bar Ass'n*, 542 F.2d 56, 58 (8th Cir. 1976) ("Section 144 is limited in application to proceedings in a district court."). Petitioner also invokes 28 U.S.C. § 455, but again, that provision is not applicable to administrative law judges. *See, e.g.*, *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 166–67 (2d Cir. 1992) ("That high standard of propriety [contained in 28 U.S.C. § 455] applies, however, only to Supreme Court justices, magistrate judges, and 'judges of the courts of appeals, district courts, Court of International Trade and any court created by Act

pursuant to those regulations.  Sections 404.940 and 416.1440, for example, provide:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.  If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw. . . . If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

20 C.F.R. §§ 404.940, 416.1440.  As this Court previously noted, "Petitioner already has objected to the ALJ, *see, e.g.*, Writs at 94; should the ALJ decide not to withdraw, Petitioner's recourse is to object to the Appeals Council, not this Court."  ECF No. 11 at 17 (citing 20 C.F.R. § 404.940).  In light of this, and contrary to Petitioner's urgings, the Court does not have "alternatives" to remove the ALJ; rather, Petitioner does.  Br. at 22–23.  The same appears true of Petitioner's other grievances—they may all be raised with the Appeals Council.  While the Court appreciates that Petitioner may find that alternative less desirable than judicial review, it is nonetheless an adequate remedy.  Given the extraordinary nature of mandamus, Petitioner is not guaranteed the "best" remedy.  While Petitioner complains of the protraction of the Agency's handling of his disability claims, it is clear from the record that Petitioner has prevented the resolution of his claims on remand. Petitioner's own requests to reschedule hearings do not render the Agency alternatives available to him inadequate.  Because other adequate remedies exist for Petitioner, mandamus is not appropriate.  *See, e.g.*, *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007) (concluding court lacked subject matter jurisdiction over mandamus claim

---

of Congress, the judges of which are entitled to hold office during good behavior.' ***The heightened standard cannot apply to administrative law judges*** who, after all, are employed by the agency whose actions they review. Otherwise, ALJs would be forced to recuse themselves in every case.") (quoting 28 U.S.C. § 451) (emphasis added).

because, "as long as USCIS is making reasonable efforts to complete the adjudication, the pace required to complete that process is committed to USCIS's discretion").

Finally, as before, the Amended Sixth Writ "requests that the Court supplant its judgment for that of the ALJ by entering summary judgment as to certain of Petitioner's claims for disability."  ECF No. 11 at 17; *see also generally* Am. 6th Writ.  Again, this simply is not an appropriate exercise of mandamus.  *See, e.g.*, *Am. Fid. Fire Ins. Co. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 538 F.2d 1371, 1374 (9th Cir. 1976) ("[M]andamus . . . may not appropriately be used merely as a substitute for the appeal procedure.") (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)); *see also, e.g.*, *Wood v. Comm'r of Soc. Sec.*, No. 6:15-CV-1487-ORL-DNF, 2017 WL 11113418, at *3 (M.D. Fla. Mar. 31, 2017) (dismissing with prejudice writ for mandamus because "[t]he remedy of mandamus is not 'a substitute for an appeal'" and the "[p]laintiff is free to argue under Section 405(g) that she was wrongly denied a particular kind of hearing that the case should be remanded for a new hearing, certain evidence should have been requested and/or considered by the agency, and the case should be assigned to another ALJ") (quoting *Plekowski v. Ralston-Purina Co.*, 557 F.2d 1218, 1220 (5th Cir. 1977)); *Manigault v. Colvin*, No. 1:11-CV-0793-MHS-JFK, 2013 WL 12157943, at *2 (N.D. Ga. Dec. 13, 2013) ("Mandamus may not 'be used as a substitute for appeal, or to control the decision of the trial court in discretionary matters.'") (quoting *Johnson v. Wilbur*, 375 Fed. App'x 960, 965 (11th Cir. 2010)), *report and recommendation adopted*, 2014 WL 12621204 (N.D. Ga. Feb. 18, 2014), *aff'd*, 609 F. App'x 982 (11th Cir. 2015)).

While Petitioner claims that, "[i]n this highly protracted case, the court can, under various mechanisms and causes of action, apply summary judgment or summary adjudication because the 'undue delay' and 'lawlessness' factors are overly enlarged," Br. at 23, the Court respectfully disagrees.  The Court remains sympathetic to Petitioner's position.  As the Court indicated in its prior order, "[u]nfortunately for [Petitioner, however], not every agency shortcoming is subject to correction in the courts."  *Lowry*, 329 F.3d at 1022.  The fact remains that this Court is one of limited jurisdiction and limited

power, and Petitioner's request is one this Court cannot fulfill via mandamus, at least as currently pleaded.  For the foregoing reasons, the Court therefore concludes that it lacks mandamus jurisdiction over the Amended Writs.

### 3.   Declaratory Judgment Jurisdiction

"The Declaratory Judgment Act[] is not a jurisdictional statute.  Stated another way, the Declaratory Judgment Act[] is not an independent source of federal jurisdiction."  *Cox v. Lee*, No. CV-20-0275-PHX-DMF, 2020 WL 1904625, at *5 (D. Ariz. Apr. 17, 2020) (citing *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983)).  Rather, "the Declaratory Judgment Act merely makes available a specific type of relief in a case where a district court already has jurisdiction."  *Neal v. Brown*, 451 F. Supp. 1335, 1337 (S.D. Cal. 1978) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950); *Jarrett v. Resor*, 426 F.2d 213 (9th Cir. 1970)).  Thus, Petitioner's request for declaratory judgment cannot alone confer subject matter jurisdiction over his Amended Writs.

### 4.   Administrative Procedure Act Jurisdiction

Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The Supreme Court, however, has held that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."  *See Califano v. Sanders*, 430 U.S. 99, 107 (1977).  Accordingly, the APA alone does not suffice to confer subject-matter jurisdiction over the Amended Writs.  *See, e.g.*, *Kim Phuong Nguyen v. Astrue*, No. 10CV1927-IEG JMA, 2011 WL 2470518, at *4 (S.D. Cal. June 21, 2011) ("[T]he Administrative Procedures Act is not an independent basis of subject matter jurisdiction.") (citing *Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 457–58 (1999)).[11]

---

[11] Petitioner appears to concede as much, *see* Br. at 23–24 (noting "the APA is typically used as a <u>cause of action</u> and facilitator of remedies once the court has opened the case and agrees to subject matter

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   5.   *All Writs Act*

Pursuant to the All Writs Act, "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Similarly to the APA, the All Writs "Act does not enlarge th[e Court's] jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999) (citing *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985); 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3932, p. 470 (2d ed. 1996); 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02[4] (3d ed. 1998)); *see also Neal*, 451 F. Supp at 1337 ("[I]t is clear that the All Writs Act affords relief only in aid of jurisdiction which a district court already has. The Act is not, in itself, a source of district court jurisdiction.") (citing *Stafford v. Superior Court of Cal.*, 272 F.2d 407 (9th Cir. 1959); *Commercial Security Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352 (10th Cir. 1972)). Accordingly, the All Writs Act alone also fails to confer subject matter jurisdiction over the Amended Writs.[12]

   6.   *Conclusion*

In light of the foregoing, the Court finds that it lacks subject matter jurisdiction over the Amended Writs, and accordingly dismissal is warranted for this additional reason.

## REMAINING MOTIONS

In light of the dismissal of Petitioner's Writs for failure to comply with Federal Rule of Civil Procedure 8 and lack of subject matter jurisdiction, *see supra* at pages 10–24, the Court **DENIES WITHOUT PREJUDICE AS MOOT** Petitioner's Counsel and Declaratory Judgment Motions.

---

jurisdiction") (emphasis in original), but nonetheless continues to assert the APA as a basis for jurisdiction, *see* Am. 1st Writ at 6.

[12] Again, Petitioner seemingly concedes that the All Writs Act is not jurisdictional, *see* Br. at 24 ("The All Writs Act provides the court with additional remedies once the court has determined it has all needed jurisdiction to proceed."), but again, Petitioner still asserts the All Writs Act as a basis for this Court's jurisdiction, *see* Am. 1st Writ at 6.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's Rule Waiver Motions (ECF Nos. 21, 22, and 23); **DISMISSES WITHOUT PREJUDICE** Petitioner's Amended Writs (ECF No. 19) for failure to comply with Federal Rule of Civil Procedure 8 and as frivolous due to lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2); and **DENIES WITHOUT PREJUDICE AS MOOT** Petitioner's Counsel and DJ Motions (ECF Nos. 20 and 24, respectively).

The Court will grant Petitioner one final opportunity to amend his claims to state "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and adequately allege a basis for subject matter jurisdiction.  Petitioner **MAY FILE** amended writs that cure the deficiencies noted above within <u>forty-five (45) days</u> of the electronic docketing of this Order.  Any amended filing must be complete in itself without reference to Petitioner's original or amended Writs.  (Although the Court will again permit Petitioner to incorporate previously filed exhibits by reference, the Court once more urges Petitioner to pare down his requests to make them more intelligible and less repetitive.)  Any claim not re-alleged in Petitioner's amended writs will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cty*., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Should Petitioner fail to file his amended writs within <u>forty-five (45) days</u>, the Court will enter a final order dismissing this civil action based both on Petitioner's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the

/ / /

/ / /

opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  January 25, 2021

Hon. Janis L. Sammartino
United States District Judge

20-CV-747 JLS (AHG)